UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA A.,[1] | ) Case No. EDCV 19-1373-JPR |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) **AFFIRMING COMMISSIONER** |
| | ) |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**I.  PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The matter is before the Court on the parties' Joint Stipulation, filed June 25, 2020, which the Court has taken under submission without oral argument.  For the reasons discussed below, the Commissioner's decision is affirmed.

---

[1] Plaintiff's name is partially redacted in line with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. BACKGROUND

Plaintiff was born in 1962. (Administrative Record ("AR") 74, 210.) She completed 11th grade (AR 74) and worked as a medical clerk and stores laborer (AR 80).

On November 12, 2015, Plaintiff applied for DIB, alleging that she had been unable to work since March 1, 2013 (AR 210), because of osteoarthritis, chronic obstructive pulmonary disease, high blood pressure and cholesterol, diabetes, neuropathy, depression, an aortic aneurysm, and a rotator-cuff tear (AR 248). After her applications were denied initially (AR 95-110) and on reconsideration (AR 112-27), she requested a hearing before an Administrative Law Judge (AR 143-44). One was held on July 19, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (See AR 71-94.) At the hearing, Plaintiff amended her alleged onset date to October 5, 2017. (AR 73.) In a written decision issued August 15, 2018, the ALJ found her not disabled. (AR 35-44.) She sought Appeals Council review (AR 207), which was denied on May 25, 2019 (AR 2-7). This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401;

Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is "more than a mere scintilla, but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for Social Security purposes if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 404.1520(a)(4)(ii) & (c).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii) & (d).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, she is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545(a)(1); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy, the fifth and final step of the sequential analysis. §§ 404.1520(a)(4)(v), 404.1560(b).

B. <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2017, the amended alleged onset date. (AR 38.) Her date last insured was September 30, 2022. (AR 37.) At step two, he determined that she had severe impairments of left-shoulder arthralgia, lumbar and cervical strains, and history of aortic aneurysm. (AR 38.)

At step three, he found that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 39.) At step four, he determined that she had the RFC to perform a range of light work with the following limitations:

> [S]he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; . . . stand and/or walk up to 6 hours in an 8-hour workday; . . . sit for 6 hours in an 8-hour workday; . . . never climb; . . . occasionally kneel, balance, stoop, crouch and crawl; and . . . frequently reach, handle and finger.

(AR 39.)

The ALJ found that Plaintiff was able to perform her past work as a medical clerk as generally performed in the national economy. (AR 43-44.) Thus, he found her not disabled. (AR 26-27.)

**V.   DISCUSSION**

Plaintiff raises a sole claim on appeal: the ALJ erred in assessing the opinion of examining orthopaedist Janet Dunlap. (See J. Stip. at 4-11.)  As discussed below, the ALJ provided specific and legitimate reasons for giving the opinion only "some weight," and remand is not warranted.

   A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither.  See Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  Id.; see § 404.1527(c)(1)-(2).[3]

The ALJ may discount a physician's opinion regardless of whether it is contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).  When a doctor's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for a "clear and convincing" reason.  Magallanes, 881 F.2d at 751 (citations omitted); Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ need provide only a "specific

---

[3] For claims filed on or after March 27, 2017, the rules in § 404.1520c (not § 404.1527) apply.  See § 404.1520c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017).  Plaintiff's claim was filed before March 27, 2017, however, and the Court therefore analyzes it under former § 404.1527.

6

and legitimate" reason for discounting it.  <u>Carmickle</u>, 533 F.3d at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31).  The weight given a doctor's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  <u>See</u> § 404.1527(c); <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007) (factors in assessing physician's opinion include length of treatment relationship, frequency of examination, and nature and extent of treatment relationship).

B. <u>Relevant Background</u>

Dr. Dunlap evaluated Plaintiff on April 25, 2018, as part of her worker's-compensation claim.  (AR 1473.)  She did not have a treating relationship with Plaintiff and examined her only that one time, but she reviewed numerous of her medical records before rendering her opinion.  (AR 1474, 1489-97.)  Although Plaintiff told Dr. Dunlap that she was injured on July 25, 2017, lifting a pallet at work, that accident was "not noted in the medical records, nor was there a claim filed for that."  (AR 1498.)  Thus, Dr. Dunlap considered only a second accident, on September 22, 2017, when Plaintiff injured her back and right arm placing a "large tote" on a conveyor belt.  (AR 1475, 1498.)  She was being treated with two Norco[4] a day; she told Dr. Dunlap that "chiropractic is out of the question, and so is surgery, and so are the steroid shots, due to my medical illnesses."  (AR 1475; <u>see</u> AR 1477.)  She apparently did not say what those illnesses

---

[4] Norco is an opioid-based medication for treating moderate to severe pain, consisting of hydrocodone and acetaminophen.  <u>See</u> <u>Norco</u>, WebMD, https://www.webmd.com/drugs/2/drug-63/norco-oral/details (last visited Mar. 21, 2021).

were. She said she could sit and stand or walk no more than 20 minutes at a time each, and she was "no longer able to bend, squat, do long walks, sleep, bathe without falling, sit or stand." (AR 1476.)

Dr. Dunlap noted numerous signs of malingering during her examination of Plaintiff. Plaintiff made "no effort" when asked to squat, "report[ing] that she was unable to," and frequently said "I can't" "when asked to do various tasks, making no effort." (AR 1479.) Although she had tenderness to "light touch palpation" "over the entire cervical, thoracic and lumbar spines," it was "out of proportion to the degree of palpation, representing symptom embellishment/augmentation." (Id.; see also AR 1485.) The doctor noted that when she "more forcefully palpated" at other times, "no tenderness was reported." (AR 1479, 1485.) The same "symptom embellishment/augmentation" occurred during Dr. Dunlap's examination of Plaintiff's shoulders and elbows. (AR 1481-82.) And when the doctor examined her knees, there was "reported tenderness to light touch palpation, out of proportion to the degree of palpation, and nonfocal, over every structure palpated in the left knee"; she did have "positive crepitus beneath both patellae, right greater than left," although all testing of the knees was normal, as was range of motion. (AR 1488.) Plaintiff made "poor effort" on the grip-strength testing, "making the test invalid." (AR 1485.) Finally, all five Waddell signs were positive.[5] (AR 1479.)

---

[5] A finding of three or more Waddell signs is "clinically significant" for malingering or some other psychological
(continued...)

Beyond those suspect findings, most of the exam yielded normal results. Plaintiff "require[d] no assistance getting up and down from the exam table" (AR 1478), and examination and testing of her feet and ankles were entirely normal (AR 1488-89). The exam results for her cervical spine were all normal, including for range of motion and motor skills. (AR 1479-81.) The same was true for Plaintiff's shoulders and hips, with all-normal test results. (AR 1481-82, 1487.) Range of motion of the elbows was normal. (AR 1483.) Dr. Dunlap's examination of Plaintiff's wrists and hands also produced almost entirely normal results. (AR 1483-85.) She did, however, have "pain reproduction in the region of the right common extensor origin with resisted finger and wrist extension," providing "some objective evidence of a right tennis elbow." (AR 1482-83.) And Plaintiff's range of motion of her thoracic spine was below normal (AR 1485), although her motor functions were all normal (AR 1486).

Dr. Dunlap ultimately found "[l]umbar sprain/strain, possible radiculopathy"; "right lateral epicondylitis," or tennis elbow; bilateral patellofemoral crepitus; and "possible lumbar radiculopathy." (AR 1497.) She rejected Plaintiff's allegations of left-knee injury as well as any injury of the cervical or thoracic spines. (Id.) She did, however, conclude that "the

---

[5] (...continued)
component to pain symptoms. Meling v. Comm'r of Soc. Sec., No. CV 19-04892-PHX-MTL, 2020 WL 5525352, at *5 (D. Ariz. Sept. 15, 2020) (citation omitted); see also Makoviney v. Saul, 830 F. App'x 192, 196 (9th Cir. 2020) (affirming ALJ's rejection of plaintiff's testimony based on finding of malingering in part because two doctors found "at least one Waddell sign each").

mechanism of injury is credible for injuries to the right elbow and lumbar spine." (AR 1498.)  Plaintiff was a "potential candidate for a steroid injection or [other] injection, into the region of the right tennis elbow." (Id.)  The doctor could not determine whether she would benefit from "additional treatment for the lumbar spine" until she had a lumbar MRI. (Id.)

Dr. Dunlap concluded that Plaintiff was "capable of working modified duty": "She should be restricted from repetitive gripping and grasping with the right hand, repetitive bending and twisting through the lumbar spine, and lifting over 25 pounds." (Id.)

The ALJ summarized Dr. Dunlap's examination of Plaintiff (AR 41-42) and gave the doctor's evaluation "some weight" (AR 42). He noted that she did not have a treating relationship with Plaintiff. (Id.)  He found her functional assessments "somewhat consistent with her examination findings and the overall evidence of record" (AR 42-43) but noted that Plaintiff had "5/5 positive Waddell signs during the examination and routinely demonstrated symptom embellishment/exaggeration," making it "difficult to ascertain [her] true degree of pain and/or limitation." (AR 43.) Thus, the ALJ credited the doctor's opinion only to the extent it was "supported by and consistent with the overall record during the relevant period." (Id.)

C. Analysis

Plaintiff contends that the ALJ erred in implicitly rejecting Dr. Dunlap's restriction on "repetitive gripping and grasping with the right hand." (J. Stip. at 4.)  She contends that in worker's-compensation parlance, "repetitive" means that

an individual has lost 50 percent of her preinjury capacity in that particular function. (Id. at 7.) She then argues that because a "stores laborer," the job she was performing when she was injured, allegedly requires "frequent" handling and grasping — that is, for up to two-thirds of the day — the ALJ necessarily erred in finding that she could do that same amount of gripping and grasping; she should have been limited to only half that, or "occasional" grasping and handling with the right hand. (Id. at 8-9.)

Because the state-agency doctors assessed no grasping and handling limitations (see AR 107, 124), the ALJ had to provide only a specific and legitimate reason to reject Dr. Dunlap's restriction on gripping and grasping with the right hand, not a clear and convincing one. See Carmickle, 533 F.3d at 1164. He did so. Plaintiff makes no mention of the main reason the ALJ relied on to implicitly reject that portion of Dr. Dunlap's opinion: her malingering.[6] Indeed, her malingering related

---

[6] There are several other gaps in Plaintiff's reasoning. First, the ALJ did not find that she could perform the stores-laborer job; rather, he concluded that she could do her past work as a medical clerk as generally performed. (AR 44.) That position also requires frequent handling, however, see Medical-Record Clerk, DOT 245.362-010, 1991 WL 672269 (Jan. 1, 2016), so the error is of no consequence. Second, the Ninth Circuit has noted that a "repetitive" restriction refers to a "qualitative" one, not a "quantitative" one, Gardner v. Astrue, 257 F. App'x 28, 30 & n.5 (9th Cir. 2007), and thus relates not to how often someone does something but in what manner, see id. It is therefore not clear that Dr. Dunlap's assessed limitation was inconsistent with a medical-record clerk's duties in the way Plaintiff argues. Finally, Dr. Dunlap assessed only a restriction on the right hand, not the left. Even if Dr. Dunlap's use of the word "repetitive" meant no more than

(continued...)

directly to the grasping and gripping restriction. She made "poor effort" on the grip-strength testing, making the test results "invalid." (AR 1485.) She also engaged in "symptom embellishment" during Dr. Dunlap's examination of her shoulders and elbows. (AR 1481-82.) Further, all five Waddell signs were positive, which the ALJ reasonably interpreted as indicating malingering. Meling v. Comm'r of Soc. Sec., No. CV 19-04892-PHX-MTL, 2020 WL 5525352, at *5 (D. Ariz. Sept. 15, 2020).

Finally, although Dr. Dunlap found some limited objective evidence of right tennis elbow, she also noted that an October 2017 x-ray of that elbow was normal, with no fracture, dislocation, or arthritic changes. (AR 1494.) A February 2018 x-ray of the same elbow was "unremarkable." (AR 1496.) It was thus entirely appropriate for the ALJ to reject Dr. Dunlap's functional assessments stemming from the tests and examination during which Plaintiff malingered. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a . . . physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); Freeman v. Colvin, 669 F. App'x 861, 861 (9th Cir.

---

[6] (...continued)
occasional gripping and grasping with the right hand, as Plaintiff argues, she perhaps could have used her left hand to occasionally grip and grasp as well, thereby amounting to "frequent" gripping and grasping overall. Cf. Lamear v. Berryhill, 865 F.3d 1201, 1205-06 (9th Cir. 2017) (remanding for development of record concerning particular job duties when plaintiff was limited to occasional handling with left hand and jobs identified by ALJ required "frequent" handling). Plaintiff testified that her particular medical-clerk job consisted of "scanning medical records" "all day," for instance, something that presumably could be done with either hand. (AR 77.)

12

2016) (finding that ALJ properly rejected doctor's opinion given evidence that plaintiff had malingered).

The ALJ also properly found that Dr. Dunlap's functional assessments were only "somewhat consistent with her examination findings and the overall evidence of record." (AR 42.) As noted, most of the examination and imaging findings concerning Plaintiff's shoulders, elbows, and hands were entirely normal. Further, Dr. Dunlap found that she might benefit from a steroid injection into her elbow, something she had never tried. (AR 1475, 1498.) Thus, the largely normal examination and imaging findings, coupled with only "some objective evidence" of tennis elbow that had not yet been treated, did not support a complete preclusion on repetitive gripping and grasping with the right hand. See Garcia v. Colvin, 668 F. App'x 714, 715 (9th Cir. 2016) (finding that ALJ properly gave "very little weight" to examining physician's preclusion on use of upper left arm because doctor's clinical findings showed that although plaintiff "had some reduced range of motion," nothing indicated "complete inability to use her left arm in a work environment").

The ALJ did not err, and remand is not warranted.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision denying Plaintiff's DIB application, DENYING Plaintiff's request for remand, and in the Commissioner's favor.

DATED: March 23, 2021

JEAN ROSENBLUTH
U.S. Magistrate Judge